UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CHRISTOPHER T. ASHLEY**<br>         **LA. DOC#108342**<br>**VS.** | **CIVIL ACTION NO. 3:10-cv-1076**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **EAST CARROLL PARISH**<br>**DETENTION CENTER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Christopher T. Ashley, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on June 23, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the River Bend Detention Center (RBDC), Lake Providence, Louisiana, but he complains that corrections officials at the East Carroll Parish Detention Center (ECDC) failed to protect him from an assault by a fellow inmate while he was incarcerated at that prison. He also complains that medical treatment was delayed, and, that his grievances were not investigated and resolved to his satisfaction. Plaintiff initially sued ECDC Warden Harris and East Carroll Parish Sheriff Mark W. Shumate. In an amended complaint filed on September 21, 2010, he joined Officers Turner and Bradford and inmate Frederick Bias. Plaintiff prays for monetary damages and his "... immediate transfer to a safer environment." For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted..

*Background*

Plaintiff is an inmate in the LDOC's custody. In February 2010 he was incarcerated at the

ECDC. On that date he and another inmate, Fredrick Bias, engaged in a fist fight in their dorm. Corrections Officer Turner, the dorm officer, did not write up an incident report, nor did he attempt to separate the combatants.

In the early hours of April 4, 2010, Bias boiled coffee and sugar in the dorm microwave and then threw the boiling liquid in plaintiff's face and beat him with a combination lock. The attack ceased only when other inmates intervened. According to plaintiff, Corrections Officer Bradford, the dorm officer, did nothing to restrain inmate Bias.

According to plaintiff, ECDC policy calls for the dorm coffee pot and microwave to be locked in the correction officers' office after 10:30 p.m. on weekdays and 11:30 p.m. on weekends. Corrections Officer Bradford allowed Bias to use the microwave after 11:30 p.m. and as a result, plaintiff sustained second degree burns to his face.

ECDC does not have medical staff on duty at night or on weekends. As a result, plaintiff had to wait 45 minutes before the on-call nurse arrived in order to receive treatment for his injuries. He was then transported to E.A. Conway Hospital, however that journey took an hour. After he was examined at E.A. Conway, plaintiff was transported to the LSU Medical Center's Burn Unit for treatment. Thus, plaintiff complains that more than two hours elapsed from the time he sustained his injury until he received treatment for the injury at the LSU Medical Center.

Plaintiff submitted a grievance concerning the February 2010 incident sometime in March 2010. He submitted a grievance complaining about the April 2010 incident on July 2, 2010. Neither grievance was answered.

In his original complaint, plaintiff alleged no fault on the part of Sheriff Shumate and Warden Harris. This deficiency was pointed out and plaintiff was instructed to amend his complaint

accordingly. Thereafter, on September 21, 2010 he amended his complaint to allege the following with regard to Sheriff Shumate and Warden Harris:

> Plaintiff contends that defendant Mark W. Shumate had a duty ... to assure that [ECDC's] wardens and employees ... enforce policy and keep all inmates safe, at all times, from assaults, batteries, etc.
>
> Based on similar complaints by inmates relative to safety, Sheriff M. Shumate is the sole authority beyond the Warden of who can and must establish methods of discipline for those employees who are failing to prevent the assaults, fights, and other similar behavior that creates an unsafe environment for inmates' safety.
>
> Defendant Warden Harris has a duty similar to defendant Mark Shumate to assure that the officers under his authority enforce policy and regulations in order to keep the environment safe for all inmates within the institution.
>
> Both defendants Mark Shumate and Warden Harris are the cause and proximate cause of plaintiff's injuries, mental and emotional distress in the following respects:
>
> For there being no disciplinary or corrective action taken for the initial fight.
>
> For plaintiff's grievances not being answered.
>
> For the second fight.
>
> For all injuries sustained from the second fight ...
>
> Plaintiff contends here that defendants Sheriff Mark Shumate and Warden Harris are liable to him ... for violation of his Due Process rights and [Eighth] Amendment violation.
>
> Accordingly where complaints or grievances are failed to be answered and forwarded to DOC, Due Process remedies are a major issue. Complain[ant] filed [two] grievances and those grievances were failed to be answered. Defendants here are both liable for failing to have and enforce Constitutional Due Process rights.
>
> Furthermore, both defendants herein have allowed a dangerous environment to be created within the prison population by both defendants' failure to have the officers in their prison functioning professionally, keeping the prisoners safe, this condition has cause[d] the assault of plaintiff with sever[e] injuries and, but not limited to plaintiff living in fear.

> Defendants duty here is to keep the prison environment safe; their failure to do so has caused plaintiff's injuries and therefore amounts to cruel and unusual punishment. [Doc. #5, Claim II]

With regard to Officer Turner, plaintiff alleged only that Turner failed to report the February, 2010 "fist fight" between plaintiff and Bias; failed to separate the two, and took "no action" against Bias. [Doc. #5, ¶9] With regard to Officer Bradford, plaintiff complained that he "never came to restrain inmate Bias" after the April 4 incident and that he allowed Bias to use the unit microwave after 11:30 p.m. in violation of prison policy. [*Id.*, ¶10-12]

### *Law and Analysis*

### *1. Screening*

When a prisoner files a complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to review the complaint as soon as is feasible and to dismiss the case if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915 and 1915A, and 42 U.S.C. § 1997e(c).

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted).

A civil rights plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal*, ___

U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Plaintiff filed an articulate original complaint setting out the basic parameters of his claim; he was thereafter allowed to amend his complaint and was directed to provide additional factual support for his claims. Further amendment of the pleadings would serve no useful purpose as it appears that plaintiff has alleged his best case. Accepting all of plaintiff's allegations as true, and, giving plaintiff the benefit of every doubt, the undersigned concludes, for the reasons stated hereinafter, that his complaint should be dismissed for failing to state a claim for which relief may be granted.

*2. Deliberate Indifference – Failure to Protect*

The Supreme Court has held that a prison official's deliberate indifference to a substantial risk of serious harm to an prisoner in his charge violates the Eighth Amendment's prohibition of cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment requires prison officials to provide humane conditions of confinement and to take reasonable measures to guarantee the safety of inmates. *Id.* at 832. A defendant prison official may be liable if he is deliberately indifferent to inmate health or safety. *Id.* at 835. Deliberate indifference requires more than ordinary lack of due care for the prisoner's interests or safety but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. *Id.* Deliberate indifference in this context means that the defendant knew of but disregarded an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and, in addition, he must also have drawn the inference. *Id.* at 837. In other words, actual knowledge and

appreciation of the risk are required. *Id.* at 837-38. Thus, an official's failure to alleviate a significant risk that he <u>should have perceived</u> but did not does not create liability. *Id.* at 838; see also *id.* at 842 ("[i]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.").

Additionally, in considering whether an Eighth Amendment violation has occurred, Courts must look to whether there was a "substantial" or "pervasive" risk of harm. A "pervasive" risk of harm may not ordinarily be shown by pointing to a single or isolated incident. See e.g. *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir.1992) (holding a "pervasive risk" is something more than a single incident and something less than a riot). Plaintiff has indicated that a "fist fight" between he and Bias preceded the April attack. He claims to have filed a grievance concerning this incident; however, it is unclear whether plaintiff ever requested that he and Bias be separated or expressed any fear of further reprisal. He offers nothing to suggest that the later attack was a foreseeable consequence of the former. Inmates are unlikely to recover under Section 1983 for injuries sustained in an isolated assaults unless they can prove that the authorities either "set him up" for the assault or deliberately ignored his repeated and clearly well-founded claims of danger. There are no allegations that the defendants set plaintiff up for the attack or ignored claims of danger prior to the attack.

The facts alleged do not demonstrate that any of the defendants inferred that plaintiff was at risk of a second attack such as occurred on April 4, 2010. Further, it does not appear that the April 4 attack was a foreseeable consequence of Officer Bradford's violation of prison policy.

In short, plaintiff has not shown that any of the defendants were deliberately indifferent to a substantial risk of serious harm and therefore, plaintiff's complaint should be dismissed for failing

to state a claim for which relief might be granted.

### 3. Delayed Medical Care

Plaintiff claimed that the prison's policy of not having around-the-clock staffing of the prison medical department resulted in a 45 minute delay in receiving medical care and treatment. He also implies that the hour-long trip to E.A. Conway and thereafter to the LSU Medical Center is also attributable to the defendants. Finally, he claims that there has been no "after care" and that he has "scar[ ] tissue in place of the burns."

Plaintiff's medical care claim, like his failure to protect claim, arises under the Eighth Amendment. To prevail on such a claim an inmate must show that care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir.1985). Whether the plaintiff received the treatment that he felt he should have is not the issue. *Estelle v. Gamble*, *supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir.1981). Further, negligence, neglect, medical malpractice or unsuccessful medical treatment do not give rise to a §1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir.1991); *Johnson v. Treen, supra*. Instead, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As stated in *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191 (5th Cir.1993).

There is no suggestion whatever that the relatively brief interval of time between the assault

and plaintiff's obtaining treatment – first at the facility, then later at the LSU Medical Center – resulted in any substantial harm or aggravation of his condition. See *Mendoza v. Lynaugh, supra*. Plaintiff admits that he was seen by medical personnel within 45 minutes after he was burned, and that thereafter, he was treated at a specialized burn center within 2 hours of receiving the injury. This relatively brief delay is not indicative of deliberate indifference. *Compare, O'Bryant v. Culpepper*, 214 F.3d 1350 (5th Cir.2000)("Although [plaintiff] was injured on a Saturday and did not receive treatment until the following Tuesday, he cannot show that the delay in treating his injury caused substantial harm"); *Chesnut v. Horton*, 2009 WL 1269992 (N.D.Tex., May 7, 2009)(12-hour delay after confrontation with a co-inmate not deliberate indifference).

Further, plaintiff must be aware that persons who are not confined in penal institutions must suffer waits of several hours in hospital emergency rooms or even waits of several days before obtaining appointments with their chosen physicians.

Finally, with regard to his claim that he has received no "after care," plaintiff again fails to state a claim. Plaintiff has not described what "after care" he feels he is entitled to and, more importantly, he has not indicated that any "after care" is warranted. Plaintiff's medical care claim must also be denied.

### 4. Grievances

Since there is no constitutionally protected interest in the processing of an inmate's grievances, plaintiff's assertion that his constitutional rights were violated by the defendants' failure to process his grievances does not state a claim and is frivolous. *See Geiger v. Jowers*, 404 F.3d 371, 37374 (5th Cir.2005).

*5. State Actor*

Finally, plaintiff seeks to visit § 1983 liability upon his assailant, a fellow inmate. Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983. Thus, a plaintiff in a civil rights suit must show that the conduct of which he is complaining was committed by a person acting under color of state law. Plaintiff has not alleged any action that would give rise to his fellow inmate being classified as a state actor. Since plaintiff is not complaining of any civil rights violations committed by a "state actor," his complaint against Bias alleges a state law tort claim, not a civil rights claim which could be addressed in Federal Court. As plaintiff's civil rights claim against inmate Bias lacks an arguable basis in law, it should be dismissed with prejudice as frivolous. To the extent that he seeks to allege a state law tort claim, that claim should be dismissed without prejudice for lack of subject matter jurisdiction.

*Conclusion and Recommendation*

Plaintiff's complaints do not establish Constitutional violation . Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**In Chambers, Monroe, Louisiana, October 13, 2010.**

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE